1

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF COLORADO

_____

In re:                          )
                                )       Bankruptcy Case No.
JEFFREY DREW LAVENHAR,          )              12-27817 MER
Debtors.                        )
                                )              Chapter 7
                                )

_____

Motions for Relief from Stay filed by First American
Title Insurance Company, response in agreement by the
Chapter 7 trustee, and objections by the Debtor and
Laurie Lavenhar

_____

FIRST AMERICAN TITLE INSURANCE COMPANY,
Movant,

JEFFREY LAVENHAR and Jeffrey Hill, Chapter 7 Trustee,
Respondents.

_____

        The above-entitled matter came on for hearing
Monday, May 8, 2013, at 9:37 a.m., before
THE HONORABLE MICHAEL E. ROMERO, United States
Bankruptcy Judge.


APPEARANCES


TRUSTEE:    JEFFREY HILL, CHAPTER 7 TRUSTEE (NOT PRESENT)
COUNSEL:    BENJAMIN SKEEN

DEBTOR:     JEFFREY LAVENHAR (NOT PRESENT)
COUNSEL:    JOHN BERMAN

CREDITOR:   FIRST AMERICAN TITLE INSURANCE COMPANY
COUNSEL:    KIRK HOLLEYMAN

CREDITOR:   LAURIE LAVENHAR
COUNSEL:    DAVID WADSWORTH


TRANSCRIPT REQUESTED BY:    DAVID WADSWORTH, ESQ.
TRANSCRIPT ORDERED ON:      AUGUST 30, 2013
TRANSCRIPT DELIVERED ON:    SEPTEMBER 13, 2013
TRANSCRIPT PRICE:           $4.25 PER PAGE; $170.00

```
 1                 P R O C E E D I N G S

 2             THE COURT:  All right, the next case is

 3   12-27817, Jeffrey Lavenhar.  We got a Motion for Leave

 4   from Stay filed by First American Title, and opposed by

 5   Laurie Lavenhar and Jeffrey Hill.  Could I get

 6   appearances, please?

 7             MR. HOLLEYMAN:  Kirk Holleyman for the

 8   Creditor, First American Title Insurance Company.

 9             THE COURT:  Thank you.

10             MR. WADSWORTH:  Morning, Your Honor.  Dave

11   Wadsworth appearing on behalf of the Objecting

12   Creditor, Laurie Lavenhar.

13             THE COURT:  Thank you.

14             MR. BERMAN:  Morning, Your Honor.  John

15   Berman appearing on behalf of the Debtor, Jeffrey

16   Lavenhar.  We also oppose the motion.

17             THE COURT:  Thank you.

18             MR. SKEEN:  Good morning, Your Honor.

19   Benjamin Skeen here for Jeffrey Hill, Trustee.  To

20   clarify, the Trustee does not oppose this motion.

21             THE COURT:  Okay.  Thank you.  I appreciate

22   that.  Okay. All right, Counsel?

23             MR. HOLLEYMAN:  Your Honor, First American

24   Title Insurance Company's move for relief from the

25   automatic stay, to pursue a pending State Court action
```

1   in the Elbert County District Court.

2          THE COURT:  This the action where I denied

3   relief from stay previously?

4          MR. HOLLEYMAN:  No, it's a second action.

5   It's the Lavenhar divorce case.

6          THE COURT:  Okay.

7          MR. HOLLEYMAN:  And First American had filed

8   a Motion to Intervene in that case, to set aside the

9   Lavenhar Dissolution of Marriage Decree, and Separation

10  Agreement, and Support Order, back in 2011.  And Judge

11  Holmes [phonetic], with the Elbert County Divorce Court

12  who had entered the Dissolution of Marriage Decree and

13  approved the Separation Agreement, granted First

14  American's Motion to Intervene in the case, back in

15  February of 2012.

16         And First American, then, filed a complaint

17  in intervention, in February 2012, to have the Lavenhar

18  Dissolution of Marriage Decree and Separation Agreement

19  set aside as a fraud on the Court.  And that case has a

20  relationship to this case, in that Laurie Lavenhar has

21  filed a Proof of Claim in this case, which is based,

22  entirely, on the assumed validity of that Separation

23  Agreement and Divorce Decree.

24         She has filed a claim that's a priority

25  unsecured claim for $347,000, all based on the

4

1    Separation Agreement.  And if that Agreement, in fact,

2    is ruled invalid by the Elbert Divorce Court, and if

3    the Decree of Dissolution is thrown out by the Elbert

4    Divorce Court, there would be no basis, in this Court,

5    for Laurie Lavenhar's claim.  Under --

6              THE COURT:  Have been any ruling on the

7    Motion to Intervene or the complaint in intervention?

8              MR. HOLLEYMAN:  The Motion to Intervene was

9    granted. The complaint in intervention is pending.  And

10   then, Mr. Lavenhar went bankrupt.

11             THE COURT:  Okay.

12             MR. HOLLEYMAN:  So, that stayed the

13   proceedings in the Elbert Divorce Court.  Under the

14   Rucker Feldman Doctrine [phonetic], we can't challenge

15   the validity of her Separation Agreement and Divorce

16   Decree in this Court.

17             We can only do that in the Elbert District

18   Court.  And again, Judge Holmes granted the Motion for

19   Leave to Intervene. So, we are seeking a relief from

20   stay to pursue that complaint in intervention, to have

21   the Separation Agreement and the Decree of Dissolution,

22   and the Support Order ruled invalid, as a fraud on the

23   Elbert Divorce Court.

24             And upon that occurring, there would be no

25   basis for Laurie Lavenhar's claim, in this Court.  So,

5

1    that's the basis of the motion.  And we believe that

2    there's cause for it.

3            The Divorce Court's especially equipped

4    tribunal.  Only it can decide the validity of its own

5    Decree.  Only it can decide if it was defrauded into

6    entering that Decree, and approving that Separation

7    Agreement.

8            The Elbert Divorce Court has the ability to

9    allocate assets and liabilities that would affect this

10   bankruptcy proceeding.  There is pending, in the Elbert

11   Divorce Court proceedings, also, a Motion for

12   Enforcement, by Laurie Lavenhar, where she has asked

13   for an Order, by Judge Holmes, enforcing support

14   obligations under the Separation Agreement.

15           So she has sought relief from the Elbert

16   District Court that, if the Court granted her motion,

17   could affect her claims in this case.  If it denied

18   that motion, could affect her claims in this case.

19           The Elbert Divorce Court is familiar with the

20   facts in that case.  Of course, it handled the divorce.

21   Also, Judge Holmes is the Judge in the [indiscernible]

22   case, which you're familiar with, from the previous

23   Motion for Relief from Stay.

24           He's the Judge on that case.  So, there are a

25   lot of efficiencies in having the Elbert Divorce Court

1    be allowed to proceed and determine the complaint in

2    intervention.

3              The issues that are matters at issue, in this

4    case, will be resolved by that Court.  Judicial economy

5    would be served, by proceeding that way.

6              The divorce proceedings were progressing.

7    They were going in tandem with the Creditors' bill

8    [phonetic] case.  The same Judge had both cases.  And

9    again, was familiar with them. And Judge Holmes

10   specifically ruled in an Order, that he would consider

11   the validity of the Separation Agreement and Decree, in

12   that intervention case.

13             So, those are the reasons that First American

14   has sought relief from stay.  And wants to pursue the

15   case.  We're prepared to make an offer of proof, should

16   the Court want to entertain it at this time, or after

17   the Court hears from other Counsel, if --

18             THE COURT:  Let me get it right now.  It's

19   your motion. Let me hear your offer of proof.

20             MR. HOLLEYMAN:  Exhibit notebook, Your Honor?

21             THE COURT:  Has Opposing Counsel received the

22   copies of these?

23             MR. HOLLEYMAN:  Already.

24             THE COURT:  All right, thank you.

25             MR. HOLLEYMAN:  Your Honor, as an offer of

1    proof, First American would state that Mr. Brian Thomas

2    [phonetic], who is Counsel for First American, will

3    establish that First American is owed approximately $2

4    million by Jeffrey Lavenhar, as a result of fraud and

5    civil theft.

6           Mr. Thomas will authenticate and lay a

7    foundation for First American's judgments, which are in

8    the notebook, as Exhibits 1, 2, 3, 10, and 11.  That

9    includes two judgments and a Order of the Colorado

10   Court of Appeals, and another Court Order.

11          Laurie Lavenhar and Jeffrey Lavenhar will lay

12   a foundation for Laurie Lavenhar's Proof of Claim.

13   That's Exhibit 16 in the notebook.

14          This Proof of Claim establishes that Laurie

15   Lavenhar's claims are entirely dependent upon the

16   validity of the Separation Agreement, Support Order,

17   and Decree of Dissolution that were approved by the

18   Elbert County Divorce Court in 10DR56.

19          Laurie Lavenhar, Jeffrey Lavenhar, and Mary

20   Baker [phonetic], and Maury Lean [phonetic], will lay a

21   foundation for Laurie Lavenhar's Motion for

22   Enforcement, which is Exhibit 12 in the notebook, which

23   Laurie Lavenhar filed, seeking a judgment against

24   Jeffrey Lavenhar for support obligations.

25          Under that same Separation Agreement, and

1    same Support Order that is a basis for her Proof of

2    Claim in this case.  Laurie Lavenhar and Jeffrey

3    Lavenhar will lay a foundation for the Separation

4    Agreement, which is Exhibit 7 in the notebook.

5              Laurie Lavenhar, Jeffrey Lavenhar, Mary

6    Baker, Maury Lean, and Brian Thomas will lay a

7    foundation for the Elbert County District Court Order

8    that First American be given notice of the Motion for

9    Enforcement, and an opportunity to intervene.

10             That's Exhibit 14.  And in that document, the

11   Elbert District Court stated that this was when the

12   Motion for Enforcement was filed.

13             The Elbert District Court stated that there

14   is, "another related case, 11CV21, that is pending, and

15   includes claims for relief, related to this Dissolution

16   of Marriage case action."

17             The Court anticipates that, despite the fact

18   that such claims have been made in the Creditors' bill

19   case, the issues regarding the validity of the

20   Separation Agreement and Support Order will be

21   addressed in the case at a reset hearing.

22             Actually, I misspoke.  That was in a later

23   Order.  The Court, in this first Order, had simply said

24   that First American should be given notice of the

25   Motion for Enforcement, and should be allowed an

1   opportunity to intervene, if it wanted to.

2            So that was what was in Exhibit 14.

3   Mr. Thomas will lay a foundation for First American's

4   Motion to Intervene in the divorce case, which is

5   Exhibit 15(a), together with all those exhibits to

6   it, which are Exhibits 15(a)(1) through 15(a)(46).

7            Brian Thomas, Laurie Lavenhar, Jeffrey

8   Lavenhar, Mary Baker, and Maury Lean will also be

9   witnesses that would establish the allegations in that

10  Motion to Intervene. Brian Thomas will lay a foundation

11  for the Order granting First American's Motion to

12  Intervene in the divorce case, which is Exhibit 5 in

13  the notebook.

14           Brian Thomas will lay a foundation for First

15  American's complaint in intervention, Exhibit 6, in the

16  notebook, where First American seeks an Order from the

17  Elbert District Court to declare the Separation

18  Agreement, Support Order, and Decree of Dissolution

19  null and void, as being a fraud upon the Court.

20           If that occurs, there would be no basis for

21  Laurie Lavenhar's Proof of Claim.  Brian Thomas,

22  Gregory Notariany [phonetic], Jeffrey Lavenhar, Laurie

23  Lavenhar, Mary Baker, and Maury Lean will establish the

24  truth of the allegations in the complaint for

25  intervention.

1        Brian Thomas, Mary Baker, Laurie Lavenhar,

2   and Jeffrey Lavenhar will lay a foundation for Judge

3   Holmes' Order of February 16, 2012.  That's Exhibit 14.

4        In that Order, he continued the hearing on

5   Laurie Lavenhar's Motion for Enforcement.  He also

6   stated, "that there is another related case, 11CV21,

7   that is pending, and includes claims for relief related

8   to this Dissolution of Marriage case action."

9        The Court anticipates that, despite the fact

10  that such claims have been made in the Creditors' bill

11  case, issues regarding the validity of the Separation

12  Agreement and Support Order will be addressed in this

13  case at a reset hearing.

14        As a result of Judge Holmes' Order, the

15  Motion for Enforcement remains pending.  And Laurie

16  Lavenhar is not reduced to judgment, her pending

17  support obligation claims.

18        Brian Thomas will lay a foundation for the

19  Plaintiff's third amended complaint in the Creditors'

20  bill case, Exhibit 4. And Gregory Notariany, Brian

21  Thomas, Jeffrey Lavenhar, Laurie Lavenhar will

22  establish the truth of those allegations.

23        Mr. Thomas will testify that the Creditors'

24  bill case was set for trial in August 27, 2012.  He

25  will testify regarding Mr. Lavenhar's efforts to

1  continue that trial, prior to filing for bankruptcy, in

2  August 25, 2012.  And Mr. Thomas will lay a foundation

3  for Exhibit 8, which is Mr. Lavenhar's Motion to

4  Attempt to Continue the Creditors' bill case trial, and

5  a Court Order denying Mr. Lavenhar's Motion to Continue

6  that trial, which was set to commence two days after he

7  filed bankruptcy.

8         Mr. Thomas will testify that Laurie Lavenhar

9  announced that she was ready for trial on the morning

10 of August 27, 2012, in the Creditors' bill case.  But

11 that, two days later, when the case was about to resume

12 on the claims against Mrs. Lavenhar for damages, that

13 she represented to the Court and to Counsel that she

14 had checked herself into the Porter Hospital, due to

15 mental problems.

16        Mr. Thomas will testify that, as a result, on

17 August 29, 2012, the Creditors' bill case was

18 continued.  Mr. Thomas will testify that hearings were

19 set on First American's garnishment claims, to be held

20 on September 6, 2012.

21        Those were pending, at the time Mr. Lavenhar

22 filed for bankruptcy.  And Mr. Thomas will testify.  He

23 will authenticate and lay a foundation for Exhibit 9,

24 which was the Order of the Arapahoe District Court that

25 vacated the hearing on the garnishment proceedings that

1    had been set for September 6, 2012, because of the

2    filing of the bankruptcy by Mr. Lavenhar.

3           Your Honor, the underlying judgment that

4    First American obtained was in 2007 CV 001040.  And as

5    set forth in the complaint in intervention, and the

6    Motion for Leave to Intervene in the Elbert divorce

7    case, which are exhibits in the notebook.

8           That case was set to go to trial on May 10th,

9    2010. And on the morning of May 10th, 2010, Judge Pratt

10   [phonetic] announced that case would start trial

11   Thursday, May 13, 2010.  And that week, of May 10th,

12   after that was announced, Jeffrey Lavenhar and Laurie

13   Lavenhar drove around to different branches of banks at

14   which they did business, and withdrew substantial sums

15   of money, in amounts under $10,000, so that they would

16   not have to report it to the IRS.

17          The bank would not have to.  And that's all

18   in the exhibits to the Motion for Leave to file the

19   complaint in intervention.

20          As set forth in that complaint in

21   intervention, and the evidence will show, that the

22   trial ended on May 14, 2010.  And that was a Friday

23   night.

24          At 11:30 p.m., Laurie Lavenhar filed a

25   Petition for Divorce with the Elbert District Court.

1    And the time of the filing the Attorneys had set was

2    for 6:30 p.m.

3            But, it was automatically delayed.  It was

4    not filed until 11:30 p.m.  And the evidence is going

5    to show that Mrs. Lavenhar said she probably was with

6    Jeffrey Lavenhar that evening.  And Judge Pratt did not

7    rule on that underlying trial for several months.

8            He ruled, on October 28, 2010, against

9    Jeffrey Lavenhar.  So there were several months where

10   the Lavenhar divorce proceeding was pending.

11           During the time period it was pending -- and

12   this is set forth in all the exhibits -- the Lavenhars

13   didn't do much to move the divorce along.  On October

14   the 28, 2010, Judge Pratt ruled against Jeffrey

15   Lavenhar.  And there was a flurry of activity on

16   November 1, 2010.

17           The invoices for Mrs. Lavenhar's Divorce

18   Lawyer are attached, as exhibits to the Exhibit 15(a),

19   in that notebook.  And they show that the Separation

20   Agreement was being revised, and amended, on November 1

21   and November 2 of 2010.

22           Well, the Separation Agreement was dated, by

23   the Lavenhars, October 26, 2010, even though it was

24   being reviewed and revised several days later, as is

25   shown by those invoices.  And that Separation Agreement

1   gave Mrs. Lavenhar the lion's share of the Lavenhars'

2   assets.

3           And the Separation Agreement also ordered

4   Mr. Lavenhar to pay maintenance of $4400 a month, when

5   his entire income was from disability.  It was only

6   $5400 a month.

7           It also ordered him to pay $1900 a month in

8   health insurance premiums for a year.  Mrs. Lavenhar

9   also kept the Antelope Ridge Trail house, which was in

10  the name of her Trust.

11          So the bottom line here was that all these

12  exhibits show that the Lavenhars basically filed this

13  divorce proceeding not knowing how Judge Pratt would

14  rule.  Let it kind of tread water for several months.

15          So when they found out that he had ruled

16  against Mr. Lavenhar, they did the Separation

17  Agreement.  And as set forth in the complaint in

18  intervention, and the exhibits, Mr. Lavenhar continued

19  to reside, after the entry of the Divorce Decree, on

20  November 5, 2010, at the Antelope Ridge Trail, which is

21  where Mrs. Lavenhar claims to reside.

22          So they continue to reside at the same

23  home.  And the evidence shows that, for example,

24  Mrs. Lavenhar's Lawyers sent their invoices for legal

25  fees for the divorce to Antelope Ridge Trail, where

1    Mr. Lavenhar was residing.

2         THE COURT:  No.  You don't have to make that

3    argument as to --

4         MR. HOLLEYMAN:  Okay.

5         THE COURT:  -- setting aside now, in front of

6    me.  I don't need that.  I'm just trying to --

7         MR. HOLLEYMAN:  I don't know how --

8         THE COURT:  -- figure out why I should give

9    you relief, so you can go back and do that, if you so

10   desire.

11        MR. HOLLEYMAN:  I don't know how in-depth you

12   want me to go.  This could go great deal of time.  But,

13   the exhibits show that Mr. Lavenhar didn't make any

14   payments on his support obligation for several months.

15        It wasn't until First American garnished his

16   life insurance and disability policies, and commenced

17   Rule 69 proceedings against him, that he, then, started

18   making support obligations to her.  This is before the

19   bankruptcy was ever filed.

20        THE COURT:  I understand.  And so, what I'm

21   getting at right now -- and you started doing this.  And

22   then, we've now ventured into the merits of your

23   Intervention Motion.  What I'm talking about -- and we

24   have those Curtis factors, which you started out --

25        MR. HOLLEYMAN:  Yes.

1          THE COURT:  -- identifying.  That's the

2    information which I need, for purposes of this hearing.

3          MR. HOLLEYMAN:  Okay, Your Honor.

4          THE COURT:  So --

5          MR. HOLLEYMAN:  Thank you for --

6          THE COURT:  -- so give me what I need.  Just

7    [indiscernible] with those.

8          MR. HOLLEYMAN:  Well, I believe that I have

9    stated all the factors that I would offer for the --

10         THE COURT:  Okay.

11         MR. HOLLEYMAN:  -- Curtis factors.

12         THE COURT:  Okay.  That's what I needed.

13   Thank you. Mr. Wadsworth?  First of all, do you have

14   any objections to any of the tendered exhibits, with

15   one caveat?

16         I recognize that there are pleadings filed by

17   Advocates in this case that I can take judicial notice

18   that they were filed, but recognizing the allegations

19   within them may or may not be true, because they're

20   subject to dispute.

21         MR. WADSWORTH:  Right.

22         THE COURT:  But the Orders, and the fact that

23   they were filed, are there any objections?

24         MR. WADSWORTH:  No, there's no objections.

25   Your Honor, the only one that we'd object to is

1    complaint in intervention, and all the exhibits.  And I

2    think the extent that you're -- not the complaint in

3    intervention.

4              It's 15, I think, the Motion to Intervene.

5    The Motion to Intervene, and then the supporting

6    exhibits; all the supporting exhibits, or most of them,

7    I think, are hearsay.

8              So to the extent that the Court is taking

9    judicial notice that that motion was filed and it had

10   those exhibits, we don't oppose that.  But --

11             THE COURT:  Okay.

12             MR. WADSWORTH:  -- we oppose [indiscernible].

13             THE COURT:  No, I understand when you're

14   dealing with -- okay, so for the record --

15             MR. WADSWORTH:  The rest of it is -- yeah,

16   the rest of these exhibits, we'd stipulate to.  And in

17   fact, Your Honor, we only listed two exhibits.  And

18   they're two of those exhibits. They're Exhibits 4 and 6

19   are the --

20             THE COURT:  All right.

21             MR. WADSWORTH:  -- exhibits that we would

22   offer.

23             THE COURT:  Do you have any additional

24   objections, Mr. Berman?

25             MR. BERMAN:  No, Your Honor.

1          THE COURT:  All right, so all of the exhibits

2    tendered by the Movant are admitted, with the notation,

3    or the caveat, that several of these exhibits are

4    pleadings in an action, pleadings which are disputed.

5          The Court will note, as it's for purposes of

6    exhibits, that they have been pleadings that have been

7    filed in a particular case.  The contents contained,

8    therein, are not accepted as truth.

9          But, just for purposes of this hearing, they

10   are admitted, because, as documents filed within a

11   action in a sister jurisdiction.  Go ahead.

12   (Movant Exhibits admitted.)

13          MR. WADSWORTH:  Thank you, Your Honor.  We

14   have a number of issues with the motion.  The first one

15   I want to address is the fact that it seems as though

16   there's sort of a post-hoc rationalization for it,

17   sitting here today.

18          Ms. Lavenhar's claim was filed after the

19   Motion for Relief from Stay was filed.  And as I hear

20   the argument right now, the entire reason for this

21   relief from stay is to prosecute an objection to her

22   claim.

23          So, that doesn't make any sense.  You don't

24   file the relief from stay motion before the claim is

25   filed, if the reason is to object to a claim that

1   hasn't been filed yet.

2           So that's number 1.  Number 2, there is no

3   objection to the claim filed.  If that's what he wants

4   to do, then file an objection to the claim.  But don't

5   file a Motion for Relief from Stay against the Debtor.

6   Ms. Lavenhar is not a Party to this motion.

7           THE COURT:  Except he's got a problem.  And

8   he points it right to it, is he could object to the

9   claim in this bankruptcy case.

10          But the claim is based upon a Decree from the

11  Elbert County Court.  I can't upset that Decree.  If

12  the basis for challenging the claim is because there

13  was some fraud on the Elbert County Court, I can't do

14  that.

15          So the only place he can go through that

16  is -- even the Federal System, the U.S. Supreme Court.

17  But in the State Court, going back to the Court that

18  issued that.

19          So what he is doing is -- and he can't really

20  properly challenge your Client's claim, in

21  [indiscernible] she so desires. Now, there's a twist in

22  what he's asking for, in that if he succeeds in doing

23  what he proposes to do, and that's set aside that

24  Decree, then we've got to figure out which assets,

25  then, are now assets of the Debtor, which are subject

1    to this proceeding. And his Client's claim in this

2    case, versus hers, but that's a whole different issue.

3              MR. WADSWORTH:   Okay.  And I respectfully

4    disagree, Your Honor, with one of those conclusions.

5    But, the first one is -- my first response to that is,

6    if this is an objection to claim, then it needs to be

7    re-pled.

8              I mean, she was not a party to this motion.

9    So, procedurally, this is not in front of you in the

10   right manner. So, I mean, right out of the gate, it

11   should be denied, at least without prejudice, and give

12   him leave to file an objection to claim and do it the

13   right way.

14             So that's number 1.  Number 2, I completely

15   disagree about Rucker Feldman.  And I think it ties

16   into the last issue you raised, which is if somebody

17   succeeds in setting aside this Descree [phonetic], what

18   do you -- this Decree, what do you do?

19             I think you need to look at what he is

20   trying to do. What is he trying to undo, unwind, in

21   the divorce case?  He is trying to have the Court

22   determine that every transfer that Mr. Lavenhar made,

23   to Ms. Lavenhar, in the divorce, was a fraudulent

24   transfer.

25             That is a 548 Claim.  That's exactly what

1  this Court has already ruled he doesn't have standing

2  to do.  But that doesn't attack the merits of Judge

3  Holmes' decision.  And that's the Rucker Feldman issue.

4          THE COURT:  But isn't it that?  And I'm

5  trying to figure it out, because if it is part of a

6  Settlement Agreement that is approved by the Judge in

7  Elbert County, and now you're coming across and saying

8  this transfer that is part of that Settlement Agreement

9  that's been approved by the Court is a fraudulent

10  transfer.

11          This transfer that's set forth in that

12  Settlement Agreement, approved by the Court, is a

13  fraudulent transfer.  Then, aren't you directly

14  challenging the Judge's Order in approving that

15  stipulation?

16          MR. WADSWORTH:  I don't think we're directly

17  challenging.  I think what we're challenging is that

18  what the Lavenhars did -- this is all, obviously, for

19  the sake of argument. We're not conceding that --

20          THE COURT:  I understand.

21          MR. WADSWORTH:  -- there were any fraudulent

22  transfers.

23          THE COURT:  Trust me.

24          MR. WADSWORTH:  But --

25          THE COURT:  I know what you mean,

1   Mr. Wadsworth.

2         MR. WADSWORTH:  -- but what is being

3   challenged is -- well, let me sort of take it from a

4   different angle.  Trustee, clearly, has authority,

5   under 548, to avoid transfers, right, that are either

6   actually fraudulent, or constructively fraudulent.

7         THE COURT:  But doesn't he face that same

8   battle?

9         MR. WADSWORTH:  Well, hold on.  Well, I mean,

10  I'm --

11        THE COURT:  See what I mean?

12        MR. WADSWORTH:  -- I'm prosecuting one of

13  these cases for another Trustee in another Division

14  right now, on the exact same issue.  It was a

15  sham-divorce argument.  And it's straight 548/544

16  claims.

17        We've already briefed the Motion to Dismiss.

18  And we survived.  I mean, we're not challenging what

19  Judge Holmes did. And what would be done in this case,

20  Mr. Hill would not be challenging what Judge Holmes

21  decided, based on the pleadings in front of him.

22        He would simply be saying that, under 548,

23  there were transfers made, in connection with this

24  divorce, that we believe were not supported by

25  reasonable equivalent consideration, or that were made

1    with actual intent to defraud Creditors.

2            So, I respectfully disagree that I don't

3    think that it gets into Rucker Feldman.  I don't think

4    it upsets what Mr. -- or it's sort of collaterally

5    attacking what Judge Holmes did.  And so, that gets to

6    the last problem, which is he doesn't have standing to

7    do that.

8            I mean, you've already ruled that he does not

9    have standing to pursue fraudulent transfer claims.

10   And the Trustee, even though he supports the motion,

11   he also puts in that support that to the extent that

12   Mr. Holleyman is trying to avoid transfers, well, he

13   doesn't have standing to do that.

14           So, it's unclear to me if the Trustee is

15   asking Mr. Holleyman to represent the Estate in this

16   Proof of Claim and do his dirty work for him.  And if

17   that's the case, he hasn't employed him as Special

18   Counsel.

19           I mean, the whole thing is kind of cocked up.

20   And it doesn't make a whole lot of sense.  At a

21   minimum, it's not procedurally in front of you,

22   properly, today.

23           But, beyond that, Your Honor, I would submit

24   that all this is, is a veiled 548 Claim.  He's given it

25   a new name.  Now, after he filed the motion, he's

1    called it a -- and the claim was filed.

2         He's called it an objection to claim.  But,

3    really, at the end of the day, all he seeks to do is

4    have transfers in the divorce set aside.

5         But then, even here, Your Honor -- so, let me

6    just follow up on that, on if you're right.  If Rucker

7    Feldman applies, doesn't it still apply that the

8    Trustee is the only one with the standing in the State

9    Court to avoid the transfers, because that's what the

10    claims are?

11         The claims are that -- because Ms. Lavenhar

12    is not a Party to this judgment.  So, the only issue

13    that First American would have, with respect to the

14    divorce, is that its judgment Debtor, Jeff Lavenhar,

15    transferred his assets to Ms. Lavenhar to avoid the

16    judgment.  That is flat out a 548/544 Claim.

17         THE COURT:  We've got two different issues

18    here.  Well, what standing they would have, first of

19    all, they were granted standing by the granting of the

20    Motion to Intervene by the Judge in Elbert County.  So,

21    the standing to issue, at least in Elbert County was --

22         MR. WADSWORTH:  [Indiscernible].

23         THE COURT:  -- [indiscernible], I understand.

24         MR. WADSWORTH:  Yeah.

25         THE COURT:  But it was still granted.  So,

25

1    what I'm dealing with right now -- and there are two

2    different -- to cut it thinly -- there are two

3    different issues here.  One, we've got that Settlement

4    Agreement, which was approved by the Court.

5              MR. WADSWORTH:  You mean the Separation

6    Agreement?

7              THE COURT:  The Separation Agreement, I

8    apologize, which is approved by the Court, which is my

9    understanding what First American is challenging.  If

10   that gets set aside, then what exists is a non-judicial

11   set of transfers, because the Order approving it is

12   gone.

13             Then, that clears the basis for all the 548

14   Claims.  And then, this Court might have the ability

15   to -- and the Trustee might have the ability to pursue

16   those.

17             What isn't going to happen here, under any

18   circumstances, is that First American's going to be

19   granted relief from the automatic stay.  And if they

20   upset that Separation Agreement, that they can, then,

21   grab those assets.

22             That's not going to happen, because if there

23   are any assets, any fraud-in-transfer actions that are

24   going to occur, if they are brought, they properly

25   belong with property of the Estate.

```
 1            MR. WADSWORTH:  Well, my response to that,
 2    Your Honor, would be, then, we're turning the Curtis
 3    factors on their head because what you're basically
 4    sanctioning, then, is two actions, which does not
 5    conserve judicial resources.
 6            I mean, you're saying, let go ahead and let
 7    First American avoid the Separation Agreement, which
 8    again, I'm still not understanding how that's not an
 9    avoidance action.  But they avoid that.  And then, the
10    Trustee steps in and then brings a second action to
11    recover the transfers.
12            It's the same action.  I mean, why can't the
13    Trustee either bring the claim into Bankruptcy Court,
14    as an Adversary, or have him intervene in the Divorce
15    Court, and make the exact same allegations?
16            THE COURT:  My only problem is that
17    intervening things, which is causing me problems.  And
18    that's the Judge's approval of the Separation Agreement
19    making that an Order of the Elbert County Court.
20            That's the block.  That's the big drape that
21    I'm seeing between being able to litigate fraudulent
22    conveyance actions. You've got a judicial Order that
23    approves that Agreement.  Until that is set aside, or
24    ignored, it is an Order of the Court.
25            MR. WADSWORTH:  But isn't this Trustee the
```

1   only one with standing to set aside that Order, because

2   the basis for setting it aside is that it was a

3   fraudulent transfer, right?  I mean, what other basis

4   would there be for setting aside the Divorce Decree?

5           Mr. Holleyman, in his offer of proof, gave

6   you the reasons, that he gave too much support, that he

7   gave her the house.  It's transfers.

8           I mean, so the fraud upon the Court, if you

9   will, is the transfers that were made in connection

10  with the Divorce.  Only the Trustee has standing to

11  avoid those.

12          THE COURT:  Okay.  Let me hear from the

13  Trustee.

14  (Asides)

15          MR. SKEEN:  Thank you, Your Honor.  As stated

16  earlier, the Trustee supports First American Title

17  Insurance Motion for Relief from Stay.

18          I think that the Trustee is not concerned

19  that by overturning the Divorce Decree, First American

20  may be pursuing claims that only the Trustee has -- the

21  fraudulent-transfer claims that only the Trustee can

22  bring.

23          THE COURT:  Mr. Wadsworth's argument is that

24  the simple attempt to set aside that Separation

25  Agreement is an action which is the exclusive purview

1    of the Trustee.  Is that right?  And if it is, then is

2    Mr. Holleyman acting on the Trustee's behalf?  And if

3    so, where's the Application to Employ?

4              MR. SKEEN:  Yeah.  I don't think that the

5    Motion to Overturn the Divorce Decree is an -- if I

6    understand the issue properly, is a basically disguised

7    Motion to Avoid Fraudulent Transfer.

8              Certainly, the facts that would be presented

9    to the Elbert County Court would be the same factors

10   that might be litigated in a future fraudulent-transfer

11   action.  But, the relief that they're seeking is not to

12   have fraudulent transfer.

13             Not to have anything be found to be a

14   fraudulent transfer.  They're simply seeking to have

15   the Divorce Decree overturned.

16             We think that there can be a narrowly

17   tailored Order on the Motion for Relief from Stay,

18   allowing the action to overturn the divorce to go

19   forward; but without giving them any authority to

20   litigate a fraudulent transfer.

21             THE COURT:  Okay.  Thank you.  Mr. Berman?

22             MR. BERMAN:  I have slightly a different take

23   than, I think, everybody.  I listened to Mr. Holleyman.

24   And I specifically wrote down that what he's wanting to

25   do is to reallocate the property division that has

1    already been determined.

2            That's exactly the words that he used.  And

3    our position is that -- and Colorado Supreme Court

4    decisions are replete with this -- is that everything

5    in a divorce is interrelated.  And I've got cases, In

6    Re Jones [phonetic], 627 P.2d 248, In Re Huff

7    [phonetic].

8            These are Colorado Supreme Court decisions.

9    834 P.2d 244, that all say property division,

10   maintenance, are all interrelated.

11           THE COURT:  So would you have --

12           MR. BERMAN:  And --

13           THE COURT:  -- us --

14           MR. BERMAN:  No.

15           THE COURT:  -- become the Divorce Court?

16           MR. BERMAN:  No, absolutely not.  I think

17   that you hit the nail on the head when you said, okay.

18   Trustee, it's your job.

19           That's what you've already ruled in this

20   case.  The fraudulent transfer, which is the property

21   division, you've already said that's your job,

22   Mr. Skeen.  Or it's actually Mr. Hill, for Mr. Skeen.

23           The other way around, Mr. Skeen for Mr. Hill;

24   that's what you've ruled.  So when you have this

25   situation, this is why we support, of course,

1   Mr. Wadsworth, is that, look.

2           If there's going to be an intervention,

3   because the circumstances have now changed; there's now

4   a bankruptcy.  Then, let the Trustee do the thing.

5           Wants to hire Mr. Holleyman, knock yourself

6   out.  Get an Order from this Court.  I don't see that

7   we have a problem with that.

8           We're not afraid of this fraudulent-transfer

9   action. We've got the best Divorce Firm in Arapahoe

10  County.  President of the Family Bar Association; you

11  think we're concerned about having this as a fraud on

12  the Court?

13          Not concerned about this at all; but let's do

14  it the right way.  This belongs to the Trustee.  Let

15  the Trustee come in, because the Trustee's already been

16  granted.

17          You've already ruled that the Trustee has the

18  fraudulent-transfer action.  This is a

19  fraudulent-transfer action case.

20          That's what this case is all about.  Let them

21  come in as the Trustee.  The Trustee wants to bring the

22  case, then the Trustee could hire Mr. Holleyman.

23          The Trustee can bring it on his own behalf.

24  But they're all going to be -- all of the things -- the

25  Court's not just going to rule that he has a right to

1    intervene.

2         Court is going to rule that there's a fraud

3    on the Court, or there's not a fraud on the Court.

4    Let's get it taken care of.  This kind of stealth

5    thing, where you lose in one --

6         THE COURT:  Who should rule on that, whether

7    it's fraud on the Court, or whether it's not fraud on

8    the Court?  Who should rule on that?

9         MR. BERMAN:  Elbert County, of course.

10        THE COURT:  Yeah.  I think I would invite.

11   You can file briefs any time.  Okay.  I just want to

12   make sure --

13        MR. BERMAN:  Absolutely.

14        THE COURT:  -- I understood which Court you

15   were talking about.

16        MR. BERMAN:  Absolutely.  I'm not trying to

17   put more work on you.  Let's get this thing done first

18   in Elbert County. We're fine with that.

19        We think that that case can be brought by the

20   Trustee, in Elbert County.  I agree.  Rucker Feldman,

21   this is no appeal from that.

22        We've got a Court Order right now that says

23   that Mrs. Lavenhar is entitled to property.  She's

24   entitled to maintenance.

25        She's entitled to health-insurance coverage.

1    That's the law.  They have only one way of getting

2    through it.  It's through intervention.

3           That's fine.  But, they don't have the

4    authority to do this, now that there's a bankruptcy.

5    Once there's a bankruptcy, it's the Trustee's

6    obligation.

7           The Trustee can't just shirk this and say,

8    this guy kind of is telling me that he's going to file

9    an objection to the claim.  That's fine.

10          But he can't file the objection to the claim

11   until he sets aside the divorce.  He can't set aside

12   the divorce, unless he has the authority.

13          That's what Mr. Wadsworth is arguing.  And

14   that's what's proper here.  You've seen it.  Wants to

15   go into Elbert County, we're okay with that.

16          But, the Trustee has to go into Elbert

17   County.  Wants to hire Mr. Holleyman; Mr. Holleyman's

18   got these gigantic files and stuff like that.

19          That's probably appropriate.  But he can't do

20   it because what they're going to be doing there is

21   going to be exactly what you've already ruled only

22   belongs to the Trustee.  And that's what the law of

23   this case is, that the Trustee has fraudulent-transfer

24   actions, not Mr. Holleyman.

25          He lost that case.  He's appealing it.  But

1    he lost that case.  This is the same exact case, only

2    with a different twist to it.  Exact same case, you've

3    already ruled.

4              THE COURT:  Okay.

5              MR. BERMAN:  And we want you just to be

6    consistent.

7              THE COURT:  I understand.

8              MR. BERMAN:  Thank you.

9              THE COURT:  Mr. Holleyman?

10             MR. HOLLEYMAN:  Your Honor, let me first just

11   dispel any notion that there's any agreement by me or

12   First American to be stocking horse for the Trustee.

13   There's been no such discussion that this would be

14   undertaken for the Trustee.  This is First American's

15   motion and the action it wants to take.

16             THE COURT:  And what does First American get

17   out of this?

18             MR. HOLLEYMAN:  Well, they want the divorce

19   thrown out, as a fraud on the Court, so that Laurie

20   Lavenhar, cannot enforce her claim in this Court,

21   because it's based on the Separation Agreement.  And B,

22   yes, they want the divorce --

23             THE COURT:  You wanted to seize the assets.

24             MR. HOLLEYMAN:  Well, ultimately, yes.  But,

25   we recognize that we can't do that, aside from outside

1   of this Court.

2           But we do want to proceed to have the divorce

3   thrown out by Judge Holmes, so that the assets are back

4   in the names of the Parties that they were in, prior to

5   the divorce.  We recognize, though, we cannot seize the

6   assets without this Court's approval.

7           THE COURT:  Doesn't that mean that a lot of

8   these assets, have they been transferred, there are

9   going to have to be fraudulent-conveyance actions

10  brought?

11          MR. HOLLEYMAN:  Well, I think if the divorce

12  is thrown out, they're going to automatically revert to

13  where they were, before the divorce.

14          THE COURT:  How?  You talked about in your

15  presentation, you talked about number of transfers that

16  happened while the divorce was [indiscernible] pending.

17  And they were ratified by the Separation Agreement,

18  which was, then, approved by the Judge.

19          MR. HOLLEYMAN:  Well, a lot of those

20  transactions happened right before the divorce was

21  filed.  Yes.

22          THE COURT:  Okay.

23          MR. HOLLEYMAN:  He did amend the Separation

24  Agreement, essentially ratified them.  Yes.

25          THE COURT:  All we're doing, by getting rid

1    of the Divorce Decree, is basically putting the Parties

2    back in wherever they exist now.  And then,

3    fraudulent-conveyance actions are going to have to be

4    brought, if there's transfers that you claim, or that a

5    Trustee would claim.

6            MR. HOLLEYMAN:  Well, that, perhaps, is --

7            THE COURT:  [Indiscernible].

8            MR. HOLLEYMAN:  -- that, perhaps, is the

9    case. Your Honor, it's a fraud on the Divorce Court.

10   It's not just a fraudulent transfer.

11           But the whole divorce was a sham, including

12   whether they intended to really be divorced.  So, it's

13   not just an action to set aside the fraudulent

14   transfer.

15           Really, it goes beyond that.  That's why the

16   integrity of the Elbert District Court's involved,

17   because it was a fake divorce.

18           So, it's not really a fraudulent-transfer

19   case.  It's an action to throw out the entire divorce

20   as being a fraud on the Court.  And there would be

21   consequences that would result from that, if that Court

22   agreed.  And the consequences would be, yes, the

23   Lavenhars would not be able to use the Separation

24   Agreement as a basis for claiming title to assets, or

25   as a basis to get approval of a claim that's based on

1    that Separation Agreement.

2              THE COURT:  Okay, thank you; yes,

3    Mr. Wadsworth?

4              MR. WADSWORTH:  I don't want to argue

5    anymore, Your Honor.  I just want to clarify.

6              THE COURT:  No, that's okay.  Trust me.

7    That --

8              MR. WADSWORTH:  Well, I want to clarify

9    something that Mr. Berman said.  I respectfully

10   disagree with Mr. Berman about Rucker Feldman Doctrine.

11   And my Client does not concede that the Divorce Court

12   is the right venue, ultimately, for this action.

13             But that sort of gets back to one of the

14   problems here is that there is no action yet.  The

15   Trustee hasn't decided whether he wants to pursue

16   something, whether he thinks there actually was fraud.

17             I mean, this is the Trustee's bailiwick.  And

18   he is not getting -- and Mr. Holleyman is trying to

19   snatch it out of his hands and take it out of the

20   Estate, out of his ability to prosecute.

21             There may never be a fraudulent-transfer

22   action.  But, if there is, sitting here today,

23   Ms. Lavenhar is not willing to concede that the Elbert

24   County Court is the proper venue.

25             I still think 548, an Adversary Proceeding,

1    could work. But, that's not, I think, to be decided

2    today.  Just want to reserve the right to make an

3    argument at a later date.

4             THE COURT:  What I'm going to do is I'm going

5    to set a hearing.  At that hearing, I want the Trustee

6    present.  And I want to hear, with respect to that.

7             Is this truly a fraudulent conveyance?  And

8    by saying "this", I'm talking about the setting aside

9    of the Separation Agreement, or the attempt to dismiss

10   the divorce.

11            Is that an action that is purely within the

12   Trustee's powers?  Or is this something different?  And

13   I want to hear from the Trustee, himself, on this one,

14   as well as his Counsel.

15            But, I want to hear from the Trustee, him,

16   because he's the one that ultimately has a lot of

17   responsibility here.  And this has got some weird twist

18   to it.  And we will take care of that.  And that's the

19   only issue we're going to hear is going to be argument

20   on that subject.  And what do we have available, couple

21   hours?

22            THE CLERK:  Guess my question is, since the

23   Trustee's not here, do we want to set this?  I can

24   email the Parties later and clear a date to make sure

25   the Trustee's available.

```
 1              THE COURT:  The Trustee's Counsel's right
 2    here.  So --
 3              THE CLERK:  Yeah.
 4              THE COURT:  -- Mr. Hill has a problem, he can
 5    file a motion with the Court.  Do we have a 30-day
 6    problem, Counsel?
 7              MR. SKEEN:  I'm willing to waive that, Your
 8    Honor.
 9              THE COURT:  Okay.  I just wanted to make
10    sure.  We're going to try to get it within 30 days, but
11    just in case, I wanted to make it.
12              THE CLERK:  We could do the morning of June
13    10th, which is just slightly over the 30 days, at 9:30.
14              THE COURT:  That work for you, Mr. Berman?
15              MR. BERMAN:  That's fine, Your Honor.  Thank
16    you.
17              THE COURT:  Counsel?
18              MR. SKEEN:  Yes, Your Honor.
19              THE COURT:  All right.  And do you understand
20    what we're going to be hearing that morning?
21              MR. BERMAN:  Yes, I do.
22              MR. SKEEN:  Yes.
23              THE COURT:  If you have any Case Authority on
24    that subject that you wish for me to consider, I ask
25    that you tender to me a week before, so I have a chance
```

39

1   to read it.  Thank you very much, folks.

2              MR. BERMAN:  Thanks, Judge.

3              THE COURT:  Nothing's ever easy in this case.

4              (Hearing adjourned at 10:22 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

```
 1   STATE OF COLORADO    )
 2                        )  ss.      CERTIFICATE
 3   COUNTY OF DENVER     )
 4
 5         I, Christopher Boone, Certified Electronic
 6   Court Reporter and Notary Public within and for the
 7   State of Colorado, certify that the foregoing is a
 8   correct transcription from the digital recording of
 9   the proceedings in the above-entitled matter.
10
11         I further certify that I am neither counsel
12   for, related to, nor employed by any of the parties
13   to the action in which this hearing was taken, and
14   further that I am not financially or otherwise
15   interested in the outcome of the action.
16
17         In witness whereof, I have affixed my
18   signature this 13th day of September, 2013.
19
20
     My commission expires August 16, 2014.
21
22
23   _____
24   Christopher Boone,
25   AAERT Certified Electronic Court Reporter
```